

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 8, 2024

**BY ECF**
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Charles Briscoe*, S2 23 Cr. 134 (VSB)

Dear Judge Broderick:

      The Government respectfully submits this letter in advance of the February 16, 2024, sentencing of defendant Charles Briscoe. For the reasons set forth below, a sentence within the Guidelines range of 18 to 24 months' imprisonment (the "Guidelines Range") is sufficient but not greater than necessary to serve the purposes of sentencing.

      **I.**    **The Offense Conduct**

      In approximately 2019, a professional athlete ("Athlete-2") created a sports agency ("Agency-1"). Codefendant Darryl Cohen was Athlete-2's investment advisor, and codefendant Brian Gilder performed tax and accounting work for Athlete-2. Athlete-2 was to be the owner of Agency-1, and planned to take over the running of Agency-1 when his professional sports career ended. Gilder was named as Chief Executive Officer of Agency-1, and Briscoe—who is a professional sports agent—was named the lead sports agent for Agency-1.

      Athlete-2 provided almost all of the funding for Agency-1. Between March 2019 and September 2020, Athlete-2 transferred approximately $865,000 from his accounts at Financial Institution-1 to Agency-1. Athlete-2's transfers constituted approximately 77% of the total funds that Agency-1 received into its primary bank account during the life of that account. Athlete-2 was not represented by Agency-1, and his payments to Agency-1 reflected what he understood to be the funding of the start-up costs for Agency-1.

      In November 2019, Briscoe and codefendant Calvin Darden, Jr., engaged in a scheme to defraud Athlete-2 of $1 million. Briscoe informed Athlete-2 that a highly-touted athlete preparing for the NBA draft ("Athlete-6") had signed with Briscoe and Agency-1. Briscoe further told Athlete-2 that Athlete-6 needed approximately $1 million as a loan to pay living and training expenses, in preparation for the NBA draft.

Briscoe then sent Athlete-2 a player-agent contract purporting to have been signed by Athlete-6, agreeing that Briscoe was to serve as Athlete-6's agent (the "Athlete-6 Contract"). The Athlete-6 contract was supposedly electronically signed by Athlete-6 and Athlete-6's mother. However, Briscoe had in fact forged both signatures, and Athlete-6 never had any conversations with Briscoe or Darden about signing with Briscoe, nor about receiving a $1 million loan.

In reliance on the false representations made by Briscoe, Athlete-2 wired approximately $1 million to a bank account that Briscoe controlled. Athlete-2 understood that those funds would be used to make a loan to Athlete-6, but the funds were never transferred to Athlete-6, nor used for Athlete-6's benefit. Instead, Briscoe and Darden kept the stolen funds. Briscoe used approximately $306,642 of the funds to pay off a prior debt and wired approximately $544,000 to a bank account controlled by Darden.

Briscoe and Darden papered the transfer from Athlete-2 with the following fraudulent documentation: (a) a promissory note in which an entity controlled by Briscoe agreed to repay $1,050,000 to Athlete-2; and (b) a promissory note in which an entity controlled by Darden, in turn, agreed to repay $1,050,000 to the entity controlled by Briscoe.

Between December 2020 and February 2021, Athlete-2 communicated with Briscoe and Darden to attempt to recoup the funds he believed had been loaned to Athlete-6. Briscoe and Darden purported at various times to be working on ensuring Athlete-2 was repaid by Athlete-6. In fact, Athlete-2 was never repaid any of the approximately $1 million that Athlete-2 sent to Briscoe.[1]

## II. Procedural History

On March 13, 2023, a grand jury returned a sealed indictment charging Briscoe with conspiracy to commit wire fraud, substantive wire fraud, and aggravated identity theft. Three other defendants—Darryl Cohen, Brian Gilder, and Calvin Darden, Jr.—were charged in the same indictment. Briscoe was arrested on March 23, 2023 and released on conditions.

On November 8, 2023, Gilder pleaded guilty to a superseding information charging him with one count of wire fraud conspiracy in violation of 18 U.S.C. § 371. Briscoe was the second defendant to plead guilty and will be second defendant to be sentenced. The previous defendant

---

[1] Briscoe was charged in this case with both the $1 million fraud against Athlete-2 and another fraud with Darden in which another professional athlete was defrauded out of $7 million in connection with the sham sale of a professional women's basketball team (the "Team-1 Scheme"). The PSR notes that, "After BRISCOE's arrest, law enforcement obtained text messages between BRISCOE and DARDEN JR. that suggested that DARDEN JR. may have been deceiving BRISCOE as to the nature of the Team-1 scheme." *Id*. at ¶ 61. Given those messages, Briscoe is not being criminally held responsible for the Team-1 Scheme at sentencing. However, Darden was not deceiving Briscoe as to the fraud against Athlete-2, and Briscoe was fully aware of the fraudulent nature of that scheme. Briscoe was not involved in the separate fraudulent schemes charged in this case involving codefendants Cohen and Gilder.

to be sentenced, Gilder, had a Guidelines range of 24 to 30 months and was sentenced to time served.

### III. The Sentencing Guidelines Range

There is no dispute as to the Guidelines Range. The base offense level for the wire fraud conspiracy is six; 14 levels are added because the loss amount is more than $550,000 but less than $1,500,000; two levels are subtracted because the defendant has zero criminal history points and meets certain other criteria; and three levels are subtracted because the defendant accepted responsibility for his crime. The defendant has no prior convictions and is in criminal history category I. His resulting Guideline range is 18 to 24 months' imprisonment.

Probation recommends a sentence of eight months. The defendant requests a sentence of time-served. The statutory maximum term of imprisonment is 60 months.

### IV. The Appropriate Sentence

#### A. Applicable Law

While advisory following *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines remain "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). That is because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. For that reason, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In imposing a sentence, the Court must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. The Court Should Impose a Sentence Within the Guidelines Range

The Government respectfully submits that a sentence within the Guidelines Range of 18 to 24 months will serve the purposes of sentencing, including the need to reflect the seriousness of the conduct, to provide just punishment, and to deter similar conduct by the defendant and others.

Briscoe and Darden perpetrated a blatant fraud on Athlete-2. Briscoe falsified the signatures of Athlete-6 and his mother—essentially, appropriating their identities in furtherance of his fraud—in order to induce Athlete-2 to wire him $1 million. Briscoe then split the money with this coconspirator. He sent no portion of the money to Athlete-6, and, indeed, Athlete-6 had no idea that he was supposed to receive a loan.

The defendant committed this crime out of greed. Moreover, he took advantage of the fact that he was a registered sports agent and a business partner of Athlete-2 to prey upon Athlete-2. This was especially pernicious here, where the defendant went through a registration process with the NBA Players Association in order to become an agent, a process designed to ensure that athletes like Athlete-2 can trust their agents' counsel and financial guidance. Briscoe traded on that trust to personally benefit himself. Moreover, professional athletes are, in many ways, vulnerable to this sort of fraud. Due to the amount of money they earn, their frequent lack of financial experience, and their grueling schedules, professional athletes are particularly vulnerable to frauds such as this one. *See, e.g.*, https://www.justice.gov/opa/pr/father-and-son-convicted-multimillion-dollar-investment-fraud-scheme (investment fraud scheme that victimized multiple former professional athletes); https://www.justice.gov/opa/pr/north-carolina-businessman-sentenced-prison-stealing-approximately-29-million-nfl-players (investment fraud that victimized multiple form NFL players); https://www.sec.gov/news/press-release/2017-147 (investment fraud involving professional athlete and his wife); https://www.sec.gov/news/press-release/2016-124 (investment fraud scheme targeting multiple professional athletes); https://www.ey.com/en_us/forensic-integrity-services/how-can-athletes-fight-the-growing-risk-of-being-targeted-by-fraud (professional athletes victims reported nearly $600 million in known fraud over 15 years). General deterrence is therefore also a key consideration in this case. Sentences of imprisonment send a message to any professionals considering taking advantage of their clients—and particularly of clients who may have less financial sophistication—that such criminal activity will result in serious penalties.

### V. Restitution and Forfeiture

Briscoe is held responsible for a loss amount of $1,000,000, which is the full amount taken from Athlete-2

As to forfeiture, Briscoe has agreed to forfeit $1,571,000, representing the funds he kept from Athlete-2 along with the funds he received as part of the Team-1 scheme.[2] A consent preliminary order of forfeiture was entered at the time of the plea. Dkt. 84.

---

[2] As part of a negotiated resolution in this case, while Briscoe was not held criminally responsible for the Team-1 scheme, he did agree to forfeit the funds he received as part of that scheme.

As to restitution, Briscoe is held jointly and severally liable for $1,000,000 to Athlete-2. The parties will submit a proposed restitution order prior to sentencing.

## VI. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines Range of 18 to 24 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/
Katherine C. Reilly
Kevin Mead
Assistant United States Attorneys
(212) 637-6521/2211

cc:     All Counsel of Record (ECF)