
```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                              23 Cr. 134 (VSB)

CALVIN DARDEN, JR.,
                                         Conference
                Defendant.
------------------------------x
                                         New York, N.Y.
                                         September 17, 2024
                                         10:00 a.m.

Before:

                HON. VERNON S. BRODERICK,

                                         District Judge

                          APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
KEVIN MEAD
STEPHEN J. RITCHIN
WILLIAM C. KINDER
BRANDON C. THOMPSON
     Assistant United States Attorney

DONALDSON CHILLIEST & MCDANIEL LLP
BY:  XAVIER R. DONALDSON
     -and-
ANTHONY RICCO
STEVEN Z. LEGON
     Attorneys for Defendant

Also Present:
Alexander Ross, Paralegal
Arjun Ahuja, Paralegal
Melissa Baccari, FBI Special Agent
```

1            (In open court)
2            MR. RICCO:  I was going to say, your Honor, if it's
3   okay with the Court, we moved over here because it's a better
4   view of the jury.  We'll move back, of course, when we start.
5            THE COURT:  Okay.  The only thing I ask is that when I
6   do introduce the folks, stand up just so the jury can make sure
7   they can see you, that's fine.
8            All right.  Well, why don't you discuss the issue, and
9   then we'll figure it out.  But are there other issues we should
10  take up before we finish getting everything ready to bring the
11  jurors over?
12           MR. MEAD:  We have some minor things, your Honor.  I
13  defer to the Court.  If there's a panel ready, we could take
14  them up at lunch or the end of the day.  I defer to the Court
15  for the end timing.
16           THE COURT:  Why don't we do that.  I think there
17  probably is a panel across the street waiting to come over.  So
18  why don't we do that.  Let me just confirm, Mr. Ricco, does it
19  make sense to not swear them in today?
20           MR. RICCO:  Yes.
21           THE COURT:  Okay. All right. Great. We're all in
22  agreement, so we'll bring the panel over now.  And as I
23  mentioned, we'll put as many folks as we can in the jury box
24  and hopefully get to 32, maybe using the first two rows.  And
25  then I'll start asking the questions.

1    MR. MEAD:  Logistically, Mr. Ahuja, one of our
2    paralegals, is going to be here for the very beginning of jury
3    selection so the jury can see him.  We're then going to send
4    him out for the rest of the day.  But I think we were going to
5    have him sit here, if that's okay with the Court.  I'm not sure
6    where else we could put him.
7    THE COURT:  That's fine.  We would then -- I'll either
8    have the prospective jurors sit to my right, your left, or --
9    in other words, to fill out the 32.  Okay.
10   MR. DONALDSON:  One other issue logistically, so
11   Ms. Reed, of course, is one of the defense counsel on the team.
12   She's not going to be here today.  So I'm thinking we might
13   want to mention that to the jurors that she will be here at
14   some point.  I don't want her to appear and who is that?
15   THE COURT:  Is Mr. Legon going to be here?
16   MR. RICCO:  He's going to be here.  He's on his way.
17   THE COURT:  Why don't we wait.
18   MR. DONALDSON:  Let's wait till Mr. Legon gets here.
19   As far as Ms. Reed is concerned, she will be here at the start
20   of the trial, but not for jury selection.
21   THE COURT: Okay. All right. Great. Thank you.
22   (Pause)
23   MR. RICCO:  Judge, I was just in touch with Mr. Legon.
24   I think we should probably get started because he has
25   difficulty controlling his time.

O9HJDAR1

1             THE COURT:  Okay.

2             MR. RICCO:  So --

3             THE COURT:  So we might as well -- Mr. Mead, you
4   mentioned there might be some preliminary things.  Are they
5   relatively quick?

6             MR. MEAD:  Yes, your Honor.  I think so.

7             One is this is entirely the government's fault, but we
8   suggested moving to a larger courtroom for the trial.  Looking
9   at the size of the tables, which had kind of been our main
10  concern, I think that the Court's courtroom makes more sense.
11  Obviously, for jury selection I think we should stay here, but
12  if possible for the Court, I think it would make sense to move
13  back to the Court's courtroom for Monday.

14            THE COURT:  Any thoughts on that from the defense?  I
15  don't have a problem with that, but we can fit 14 in the jury
16  box.

17            MR. DONALDSON:  I don't have a problem with that.  The
18  only thing I would ask is that we do my electronic check up
19  there sometime this week.  I just want to make sure everything
20  works up there like it works down here, so we can do that.
21  Other than that, it's fine.  More comfortable is more
22  comfortable.

23            THE COURT:  Okay.  All right.

24            MR. MEAD:  There are a couple of motions the
25  government has filed, two under seal, and then the motion about

1   the Wiseman cross. I think that the defense's responses to
2   that I think are due on Wednesday is my understanding.
3       We discussed introducing documents via Federal Rule of
4   Evidence 902(11), which is the certifications to authenticate
5   business records. I've had a couple of conversations with
6   defense counsel. My understanding is that they generally are
7   not planning to challenge authenticity on that ground, but
8   they're still thinking about it to some extent.
9       I'm not sure if it makes sense to kind of put some
10  kind of deadline on it or for us is talk further about it. I
11  don't think there will be a challenge to authenticity. I don't
12  think a challenge to authenticity, even if one were made, would
13  prevail, but we want to make sure we're not delaying the trial
14  for that.
15      THE COURT: If you had the option, you may decide to
16  call the person if you wanted.
17      So let me turn to the defense. Is it that you haven't
18  looked at the documents yet so you're not quite sure? In other
19  words, what's the -- because the issue would be whether the
20  government would call a live person or have me rule that the
21  certification is sufficient to overcome any objection.
22  Mr. Donaldson?
23      MR. DONALDSON: We have had some discussions with the
24  government about this issue. The government's correct that
25  there likely will not be an objection. We have been going

1    through all exhibits.  My issue, as I told the government, is
2    that I found some documents that in my opinion just weren't
3    supposed to be where they claim they were.  And so because of
4    that, I wasn't willing to wholesale consent to the authenticity
5    of certain packages of documents because, again, quite frankly,
6    some documents just weren't where they were supposed to be.  So
7    I told them I would get back to them shortly, and I will do
8    that this afternoon or sometime this evening.
9              THE COURT:  Okay.  I'd like you to do that by
10   Wednesday to provide them -- in other words, where those issues
11   are — and by "issues," I mean where you have a package of
12   documents that are under a certification where you think that
13   several documents within that are not properly part of that
14   batch so that we can figure that out.  If need be, we can
15   have -- I can hear from the parties later in the week so we can
16   resolve that issue if there's still a problem.
17             The other option is if there are documents that -- and
18   again, it's up to the parties, but if there are documents the
19   government wasn't going to rely on anyway and the certification
20   otherwise meets the defense scrutiny, we can just excise the
21   other -- I mean, I don't know what the certification says, but
22   if the parties agree, we can move forward that way.  And look,
23   obviously, Mr. Donaldson, Mr. Ricco, I'm not -- whatever you
24   decide to do, it's entirely up to you.  We just need to know
25   sooner rather than later.

1        MR. DONALDSON:  I understand.  Thank you.

2        MR. MEAD:  The Court asked the parties to confer as to
3   whether the Court should instruct the jurors not to watch
4   *Dancing with the Stars*, and we both think that is the right
5   course.  And we think the Court should instruct the jury not to
6   watch that television show.

7        THE COURT:  Should I tell him why?  When does the
8   witness start on the show?

9        MR. MEAD:  I believe it's tonight.

10       MR. DONALDSON:  I believe it's tonight.  And there is
11  just -- I believe it's tonight, and I don't know whether or not
12  the Court's instruction goes as far as the dancing with the
13  stars show as well as these podcasts that now are popping up
14  where the potential witness is talking about everything that he
15  can talk about.  So I would ask the Court in its general
16  instructions to have them not watch anything related to the
17  witness.

18       Again, I just think that he's in the interest of I
19  guess promoting his *Dancing with the Stars* show and also
20  promoting other things, he's doing a lot of now podcasts and --
21  well, he has a podcast and doing other thing, so I think that's
22  important that we instruct the jury not to watch anything
23  related to Mr.  -- well, the witness.

24       THE COURT:  You can say his name, right?

25       MR. DONALDSON:  Okay.  Mr. Howard.

1          THE COURT:  Okay.  Any objection from the government
2  to that?
3          MR. MEAD:  No.  We think that makes sense as well,
4  your Honor.
5          THE COURT:  Okay.  With regard to the motion that was
6  filed I think yesterday under seal, my understanding is that
7  the defense intends to cross-examine about the issues that were
8  discussed in that letter.  Do you intend, Mr. Donaldson, to
9  file an opposition?
10          MR. DONALDSON:  Are we speaking of the motion that was
11  filed yesterday under seal?
12          THE COURT:  Correct.
13          MR. DONALDSON:  Yes.
14          THE COURT:  All right.  When in the order of witnesses
15  is that person going to be called as a witness?
16          MR. MEAD:  Wednesday morning we think, your Honor.
17          THE COURT:  Okay.  So Mr. Donaldson, I'd like to get
18  any objection that you have.  Since we're getting other things
19  on Wednesday, why don't we say on Wednesday so that we can
20  round that out and figure out exactly -- because my
21  understanding is or the phrasing that the government used
22  was -- well, to the extent that your cross-examination would be
23  circumscribe as to particular issues relating to what the
24  government discussed, I'd like you to meet and confer to figure
25  out whether the government has views with regard to certain

1  parts of it, your cross, or not.  But otherwise I'd like to get
2  the opposition by Wednesday.
3             MR. DONALDSON:  I'll get the opposition to the Court
4  by Wednesday.
5             THE COURT:  Okay.  Mr. Mead?
6             MR. MEAD:  I assume the Court means Wednesday
7  tomorrow, not Wednesday --
8             THE COURT:  You know what?  Why don't we make it
9  Thursday.  I had Monday on the brain.  Sorry.  Why don't we
10 make it Thursday.
11            MR. DONALDSON:  I did as well.  I thought today was
12 Monday.
13            THE COURT:  Okay.  So Thursday.  But the other
14 oppositions are due tomorrow.
15            MR. MEAD:  Just an evidentiary issue that I don't
16 think there will be an issue with, but I wanted to put on the
17 record now, the co-conspirator in this case is Charles Briscoe.
18 We seized phones from Mr. Briscoe, we do intend to introduce
19 evidence from those phones.  Mr. Briscoe through his attorney
20 requested the return of those phones, and we returned them to
21 him as evidence.
22            So our plan to introduce the documents would be to
23 call the individual who extracted those phones.  He will
24 testify to the extracted phones with a particular serial
25 number.  We'll link those serial numbers to Mr. Briscoe, and

1  he'll testify that certain documents from the extraction are
2  true and accurate copies of materials that were on that
3  extraction.  I don't think any of that is controversial, but
4  obviously it's an important part of the case and I wanted to
5  front it for the Court and defense.
6          THE COURT:  Mr. Donaldson?
7          MR. DONALDSON:  We don't see a problem with that,
8  Judge.  We'll address it when it comes, but I have no issue
9  with that right now.
10         MR. MEAD:  And then last issue, your Honor, on the
11 defense case, we're very grateful that the defense provided a
12 witness list on Friday evening.  A couple of issues kind of
13 related to that.  One is that there are two lawyers on that
14 defense witness list.  It is my understanding that the defense
15 is not going to assert any sort of advice of counsel or
16 presence of counsel defense.  There's been no notice here.
17         My general understanding from my conversation with the
18 defense was the same as to that.  But I think the defense is
19 still perhaps a little bit thinking about it, and so I just
20 wanted to make sure that that was on the record that -- I mean,
21 look, we think it's too late, and I don't think they're going
22 to make that defense anyway.  But I just wanted to front that
23 for the Court as well.
24         THE COURT:  These lawyers, had they represented
25 Mr. Darden?

1    MR. MEAD:  It's a bit complicated, your Honor.  One of
2 them is named Art Horne.  I understand -- and this is based on
3 the government's understanding and perhaps could be wrong.  I
4 understand that Mr. Horne represented Mr. Darden in an
5 unrelated previous matter and discussed representing Mr. Darden
6 in connection with this criminal case now, but did not do so.
7 That's my understanding.
8    Again, the defense may have some more information
9 about that.  The other attorney is Michelle Pamies.  It is my
10 understanding that the defendant and his co-conspirator hired
11 her in connection with the Atlanta Dream deal, but that her
12 client was technically Dwight Howard, the victim.  And that's
13 based on invoices that we submitted listing Mr. Howard as the
14 client.  We have not yet spoken to Ms. Pamies, and so it's a
15 little bit opaque to us.
16    Obviously, if there were to be some sort of advice of
17 counsel or presence of counsel defense, that is typically
18 raised weeks before trial, and there's many disclosures and
19 things to be made.  And I don't think the defense is going to
20 do that.  I just want to be clear about that.
21    THE COURT:  I think yes, if there was going to be
22 advice of counsel defense, I would have wanted to hear about
23 it.  But preliminarily, I mean, is there going to be a waiver?
24 In other words, if Ms. Pamies represented Mr. Howard, wouldn't
25 Mr. Howard have to waive his attorney-client privilege as well

1    as whoever -- in other words, I don't know what the nature of
2    the testimony is, but if you're calling lawyers who represented
3    folks, they would have to waive their privilege depending on
4    the scope of the testimony.  And then wouldn't you be entitled
5    to get everything associated with that attorney-client
6    relationship?
7             MR. MEAD:  They're not our witnesses.
8             And another issue -- sorry.  Go ahead, your Honor.
9             THE COURT:  No.  No, finish your thought.
10            MR. MEAD:  Another somewhat related issue is we
11   haven't received any 26.2 material for any of the defense
12   witnesses, so we have no understanding of what the scope of
13   their anticipated testimony is.
14            THE COURT:  Okay.  All right.  Mr. Donaldson,
15   Mr. Ricco, in terms of the lawyers, I just need to know if it's
16   about or implicates the attorney-client relationship with
17   either Mr. Darden or Mr. Howard because there are a lot of
18   things I would have to -- well, first, is there going to be an
19   advice of counsel defense?
20            MR. RICCO:  If there were, your Honor, you would have
21   received notice of it.
22            THE COURT:  Okay.  That's a no?
23            MR. RICCO:  That's a no.
24            THE COURT:  Okay.  All right.  And second, is the
25   testimony going to implicate the attorney-client relationship?

O9HJDAR1

1   In other words --
2              MR. RICCO:  I understand.  The answer is no, as far as
3   we know, Judge.  Oftentimes individuals who are fact witnesses
4   have other titles like lawyers, psychiatrists, etc. etc., but
5   that doesn't mean that that's within the scope of their
6   testimony.  So these are fact witnesses.
7              THE COURT:  Okay.
8              MR. DONALDSON:  Potentially.
9              MR. RICCO:  Mr. Donaldson added the word "potential."
10             THE COURT:  Okay.  All right.
11             MR. RICCO:  And their names are on the list because
12  their names will be the subject of testimony whether or not
13  they testify or not.
14             THE COURT:  Sure.  I understand.  All right.
15             So I guess right now there's nothing to be done.  But
16  if it turns out you are going to, in fact, call those folks —
17  and you may not need to — I may ask you to give a proffer at
18  least to me of what their testimony would be.  It's one thing,
19  oh, I was present at a meeting and there were other people
20  there, as opposed to, yes, I was meeting with Mr. Darden and he
21  was telling me X, Y, and Z.  So I just want you to be prepared
22  that I may ask for that to happen.
23             MR. RICCO:  Yes, sir.
24             THE COURT:  Okay.  All right.  Thank you.
25             Anything else, Mr. Mead?

1          MR. MEAD:  Somewhat relatedly, we haven't received
2   26.2 material for any witnesses.  We haven't gotten the exhibit
3   list yet.  I don't know if the defense has contemplated
4   exhibits.  I don't know if they have 26.2 material from any
5   interviews.  But if they do, we'd obviously like to get it on
6   the sooner side, your Honor.
7          THE COURT:  All right.  First, I guess, is there such
8   material and when would that material -- because I think,
9   Mr. Donaldson, I have a vague recollection that at the final
10  pretrial conference there was mention of certain documents, so
11  let me ask when -- and any 3500 equivalent.
12         MR. DONALDSON:  Your Honor, I think we talked about
13  defense exhibits, and I think the Court indicated that we
14  will -- well, I indicated and the Court agreed that we would
15  get those to the government as quickly as possible.  We just
16  don't have those put together yet as far as any 26 documents or
17  3500 documents.  We will also abide by our responsible
18  obligations to get those to the government as quickly as
19  possible.  If we have it, we will make sure they get them.
20         THE COURT:  I didn't catch the last part.
21         MR. DONALDSON:  If we have any documents related to
22  any witnesses that we will be calling, we will get those
23  documents over to the government as quickly as possible.
24         THE COURT:  So Mr. Mead, I will consider sort of a
25  deadline for that.  Obviously defense doesn't need to call any

1    witnesses, and the government hasn't started its case, opened

2    or anything like that, so it may be at some point during the

3    government's case.  But what I want to avoid, Mr. Donaldson,

4    Mr. Ricco, is any delay because of that.  Okay.

5            Anything else, Mr. Mead?

6            MR. MEAD:  No, your Honor.  Thank you.

7            THE COURT:  Anything from the defense?

8            MR. DONALDSON:  No, your Honor.  Thank you.

9            THE COURT:  Okay.  All right.  So why don't folks take

10   a break because we're going to bring -- to use the restroom.

11   We're going to bring the panel over in ten minutes, okay?

12           MR. DONALDSON:  Very well.  Thank you.

13           THE COURT:  Thank you very much.

14           (Recess)

15           THE COURT:  So we're going to bring the jury over.

16   I've donned a mask because I have some sniffles.  And until I

17   confirm -- I don't think it's COVID, but I'm going to wear it

18   just in case and obviously during sidebars.  But I'm in the --

19   because all the COVID tests I have are expired, so I need to

20   get some up-to-date ones.

21           We're going to bring the prospective jurors over.  Is

22   there anything we need to take up before we bring them over?

23           MR. MEAD:  No, your Honor.

24           THE COURT:  Okay.  Let's go.

25           (Adjourned)