**BLOCH & WHITE LLP**

90 BROAD STREET, SUITE 703
NEW YORK, NEW YORK 10004
(212) 702-8670
WWW.BLOCHWHITE.COM

DIRECT DIAL: (212) 901-3820
DIRECT E-MAIL: MBLOCH@BLOCHWHITE.COM

November 20, 2025

**Via ECF**
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007
BroderickNYSDChambers@nysd.uscourts.gov

Re:   *United States v. Cohen,* No. 23-cr-134 (VSB)

Dear Judge Broderick:

We write to compel the Government to produce to the defense *Brady/Giglio* information in its possession that relates to its lead witness, Chandler Parsons. In particular, we are seeking statements made by Mr. Parsons or representations from his counsel to the Government since the defense presentations in June that either (1) reaffirm false assertions he made previously; (2) recant assertions he made previously and/or provide context or justifications for those assertions; or (3) claim a failure to recall previously made assertions. The defense has reason to believe the Government has communicated with Mr. Parsons and/or his counsel in recent months, following the defense presentations which focused, in part, on Mr. Parsons's multiple prior false statements. Such communications would have necessarily generated the additional *Brady/Giglio* material described above. The Government refuses to even acknowledge any such meetings, let alone produce any resulting *Brady* evidence to the defense. Here, the material that the defense believes the Government is withholding relates to the core of the allegations against Mr. Cohen made by Mr. Parsons. Given Mr. Parsons's credibility issues, not to mention his potential legal exposure for both his conduct and apparently false representations to the Government, it remains an open question as to what he will testify to at trial, if the Government calls him at all, which they also refuse to disclose. With trial set for January 20, 2026, the Government's choice to intentionally withhold material that could dramatically impact the nature of scope of the trial is not a legitimate tactic because it is meaningfully impairing the defense's ability to prepare.[1]

There is no dispute that Mr. Parsons's testimony alone supplies the basis for a substantial portion of the Government's case against Mr. Cohen. The Government has conceded that Mr.

---

[1] Additionally, although Mr. Parsons is necessary to the Government's case, and the Government seemingly had every intention of calling him before the presentations, the Government now will not confirm even that it intends to call Mr. Parsons to testify at trial. Instead, the Government merely instructs that the defense should "prepare for trial as though [the Government is] going to call Mr. Parsons." Such preparation is exceedingly difficult without any confidence as to the nature and scope of the allegations that Mr. Cohen will actually need to defend against. This sort of gamesmanship could also result in a tremendous waste of time and precious resources chasing issues in a case where there are no witness safety concerns or other justification for withholding this information 60 days from trial.

1

Parsons's claims are sufficiently intertwined with the rest of its case that a trial likely cannot proceed without Mr. Parsons's testimony. Mr. Parsons is the only witness who claims to have been a victim of each of the three alleged schemes and is singularly responsible for the evidence as to one of the alleged schemes. The defense has highlighted for the Government myriad documents in the Government's possession that directly undermine Mr. Parsons's allegations as to each of the alleged schemes and raise a significant concern that Mr. Parsons (both directly and through counsel) knowingly misled the Government. Additionally, a key portion of the Government's indictment stems from transactions that arise out of Mr. Parsons's own potentially fraudulent misconduct. As referenced in Paragraph 35 of the indictment, Mr. Parsons owned and operated a sports agency that represented and earned commissions from fellow NBA players while Mr. Parsons was still an active player in the NBA. As Mr. Parsons was aware, such conduct was (at a minimum) a flagrant violation of the NBA's Collective Bargaining Agreement because of its obvious implications for the integrity of NBA games—indeed, Mr. Parsons actually played in games both with and against players that his illicit sports agency simultaneously represented. There is little doubt that Mr. Parsons was aware of the severe repercussions of his conduct, should it have been revealed. The sports agency described in the indictment thus provided Mr. Parsons with both a motive to conduct many of the transactions at issue in this case as well as a motive to lie about them. And that is only one of multiple issues with Mr. Parsons's credibility of which the Government is aware and which will likely be the subject of pre-trial litigation. Any additional communication that Mr. Parsons had with the Government (either directly or through his counsel) regarding the schemes alleged, his illicit sports agency and/or those other issues would unquestionably constitute *Brady/Giglio* material.

Following an extensive defense presentation to the Government regarding these issues, the Government investigated the defense assertions for more than three months. It is difficult to imagine that the Government's three-month investigation into Mr. Parsons's claims did not include communication with Mr. Parsons and/or his counsel. However, despite persistent defense requests, the Government will neither confirm nor deny whether they have discussed the case with Mr. Parsons since the presentations. But the Government has produced other *Brady*/*Giglio* material they recently received from Mr. Parsons's counsel concerning the subject matter of the defense presentation, indicating that the Government has at least communicated with Mr. Parsons's counsel.[2]

Under *Brady* and *Giglio*, the Government has a constitutional duty to "disclose evidence favorable to an accused when such evidence is material to guilt or punishment," encompassing "not only exculpatory material, but also information that could be used to impeach a key government witness." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (first citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); then citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Although, "as a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant," *id.* at 146, a defendant must "possess[] *Brady* evidence in time for its effective use," *id.* at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." *Id.* at 146.

---

[2] The defense is aware through its own investigation of additional witnesses the Government has spoken to since the defense presentation who have provided the Government with information favorable to the defense which has the Government similarly has not disclosed to the defense.

2

Although the "Second Circuit has declined to specify a precise meaning for the phrase 'in time for effective use,' . . . a district court has the discretion to order *Brady*/*Giglio* disclosure at any time as a matter of 'sound case management.'" *United States v. Taylor*, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014), *aff'd*, 802 F. App'x 604 (2d Cir. 2020) (first quoting *United States v. Rodriguez*, 496 F.3d 221, 227–28 (2d Cir. 2007); then quoting *United States v. Nogbou*, 2007 WL 4165683, at *3–4 (S.D.N.Y. Nov. 19, 2007)); *see also United States v. Adams*, No. 24-CR-556, 2024 WL 4839627, at *1 (S.D.N.Y. Nov. 20, 2024). Exercising this sound discretion, district courts have ordered expedited *Giglio* disclosure a month or more before trial. *See, e.g.*, *United States v. Aparo*, 221 F. Supp. 2d 359, 366 (E.D.N.Y. 2002) (ordering *Giglio* materials produced four weeks before trial); *United States v. Killeen*, No. 98-CR-143, 1998 WL 760237, at *5 (S.D.N.Y. Oct. 29, 1998) (denying defendant's motion for discovery but ordering the Government "to produce *Giglio* and *Agurs* material no later than six weeks before trial"). Alternatively, in lieu of ordering disclosure, certain courts have accepted the Government's representation that it will disclose *Brady* or *Giglio* material a month or more in advance of trial. *See, e.g.*, *United States v. Maxwell*, 534 F. Supp. 3d 299, 324 (S.D.N.Y. 2021), *aff'd*, 118 F.4th 256 (2d Cir. 2024) (denying defendant's request for early disclosure but noting that the Government agreed to produce *Giglio* material six weeks in advance of trial); *United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) (denying defendant's request for early disclosure but noting that the government represented that it "will provide *Brady*/*Giglio* material regarding its eyewitnesses four weeks prior to the suppression hearing"). Such early disclosure is especially appropriate where, among other things, the defendant provides "reason for suspecting the Government will not comply" with its *Brady*/*Giglio* disclosure obligations or where "the Defense would require significant time to investigate and make effective use of the disclosure." *Mohamed*, 148 F. Supp. 3d at 246. Concern about the defendant's constitutional "right to a fair trial" is especially profound where *Giglio* material is relevant to "statements made by Complainant that, if unimpeached, carry great potential weight." *United States v. Shipp*, No. 19-CR-029, 2020 WL 1140474, at *1, 5 (E.D.N.Y. Mar. 9, 2020) (ordering disclosure of *Giglio* material related to complainant two weeks before jury selection).

Expedited disclosure of *Brady*/*Giglio* material in the Government's possession related to Mr. Parsons is especially warranted under the circumstances here. *First*, the *Brady*/*Giglio* material related to Mr. Parsons that Mr. Cohen seeks is "essential" to Mr. Cohen's defense for reasons described above. Mr. Parsons is the Government's lead witness who the Government has substantial reason to know has misled them about the allegations in this case. Whether he intends to double down on those claims or disavow them at trial is critical to the defense's ability to put on a defense. The fact that Government has already produced statements by Mr. Parsons made to the Government prior to the defense presentation does not help the defense process what Mr. Parsons intends to testify to after he was presumably confronted with hordes of evidence undermining his initial claims. Nor does it relieve the Government of the obligation to produce *Brady*/*Giglio* evidence within its possession.

*Second*, issues related to Mr. Parsons's testimony will likely be the subject of pre-trial litigation. The parties are currently negotiating a pre-trial disclosure schedule. The Government's current proposed disclosure date—December 19—calls for disclosure of *Giglio* material after the Court-ordered motion *in limine* deadline of December 15. While that deadline may be acceptable

for other Government witnesses, it is not for a witness like Mr. Parsons, whose testimony is both so central and so dynamic. Without any understanding as to (1) whether Mr. Parsons will indeed testify and (2) his latest version of events, it is difficult to prepare for a trial where it is not even clear what the allegations will ultimately be.

Accordingly, we respectfully request the Court order expedited disclosure of *Brady/Giglio* material for a single Government witness: Mr. Parsons.

Respectfully submitted,

Michael L. Bloch
BLOCH & WHITE LLP
Michael L. Bloch, Esq.
90 Broad Street, Suite 703
New York, New York 10004
(212) 901-3820
mbloch@blochwhite.com